a party to the immediate transaction of the assignment to Elise Boyd,
nor was he prohibited from testifying as to the fact of the money
with which the redemption was made being paid by him.   He did
not testify that he paid that money to Samuel Boyd, nor that it was
a transaction in which Samuel Boyd personally participated in any
way.   From all that appears, Robert Boyd made the payment for
the redemption by his own hand, or through the attorney above refer-
red to.

No other exception requires extended consideration.   The court
was right in rejecting the documentary evidence offered respecting
findings of fact and other writing in an action tried in the superior
court involving another piece of property.   The manner in which the
question arose in this case, and the issue upon which the evidence
was offered, required the justice at special term to rule on that point
as he did.   The offered findings were not conclusive upon the de-
fendants in this action, and they could not be used by the plaintiff to
establish an estoppel by record in this case.   On the whole case, we
are satisfied that the plaintiff failed utterly to establish the aver-
ments of the complaint; and the court below was right in the conclu-
sion at which it arrived, and any other would have been grossly un-
just.

The judgment must be affirmed, with costs.   All concur.

━━━━━━━━

(21 App. Div. 373.)

KLING et al. v. IRVING NAT. BANK.

(Supreme Court, Appellate Division, First Department.   October 8, 1897.)

1. TRIAL—DIRECTION OF VERDICT—REVIEW.
   Where both parties move for the direction of a verdict, and the case is
   submitted to the court, any facts that the jury would have been warranted
   in finding, or any inference that they might, under proper instructions,
   have drawn, may be deemed to have been found and drawn by the court in
   favor of the successful party.

2. BANKS AND BANKING—DISCOUNTS—INSOLVENCY—RESCISSION.
   W., who owned a private bank, conducted it under a corporate name, and
   in his letter heads, forms of drafts, etc., used terms, titles, and expres-
   sions reasonably calculated to create the belief that it was an incorporated
   bank.   Defendant, justifiably relying thereon, and under such a belief,
   gave him credit under his bank name on a draft purporting to be drawn
   by him on his bank as cashier thereof.   When he drew it he was hope-
   lessly insolvent, and before the credit expired he made an assignment for
   his creditors to plaintiffs.   Defendant first learned the facts on that date,
   and at once rescinded the credit, and notified plaintiffs, who sued to recover
   the balance.   Held, that defendant was entitled to rescind the credit.

3. SAME—EVIDENCE OF INSOLVENCY—RELEVANCY.
   The draft was dated July 14, 1896.   In October, W. assigned, and in No-
   vember, 1896, the plaintiffs, as W.'s assignees, made a statement of W.'s
   liabilities.   Held that this, with testimony that there were no losses be-
   tween July and November, and no extraordinary shrinkage in assets or
   increase of liabilities between the dates named, was not incompetent on
   the question of W.'s insolvency in July.

4. SAME—BANKING CUSTOMS—RELEVANCY.
   It was proper to exclude evidence of the customs of other banks in Ohio,
   where W. did business, in the matter of the form of letter heads, since
   the question was not whether W. might legally use the letter head em-

ployed by him, but whether he had so conducted his business as to induce the belief that his bank was incorporated.

Appeal from trial term.

Action by Amos N. Kling and Elisha G. Allen, assignees, against the Irving National Bank. From a judgment entered on a verdict directed in favor of defendant by the court, and from an order denying a new trial, plaintiffs appeal. Affirmed.

On October 19, 1896, Thomas P. Wallace, of Marion, Ohio, made an assignment for the benefit of his creditors to Amos N. Kling and Elisha G. Allen, the plaintiffs herein. This action is brought by said assignees to recover from the Irving National Bank the balance which stood upon its books to the credit of Wallace, in the name of the Marion Deposit Bank, on the day said assignment was made. Prior to October 19, 1896, Wallace had been conducting a private banking business at Marion, Ohio, under the name of the Marion Deposit Bank, and under that name had deposited moneys from time to time with the defendant. In addition to receiving the deposits, the defendant had discounted drafts for Wallace, doing business under the name of the Marion Deposit Bank. All his correspondence was on letter heads in the following form:

"Established June 10, 1854.

"T. P. Wallace, Cash'r.   E. G. Allen, Asst. Cash'r.   P. Dombaugh, Teller.
"Marion Deposit Bank."

All the drafts ran in the name of the Marion Deposit Bank, and were signed by T. P. Wallace, Cashier. In July, 1896, the defendant received from the Marion Deposit Bank the following letter:

"Established June 10, 1854.

"T. P. Wallace, Cash'r.   E. G. Allen, Asst. Cash'r.   P. Dombaugh, Teller.
"Marion Deposit Bank.

"Marion, O., July 14, 1896.

"Jas. Dennison, Esq., Cas.—Dear Sir: I herewith hand you our draft on Irving Nat. Bank, $5,000, dated July 14, 1896, at 4 mos. Please discount same, and place proceeds to our credit, and oblige,
"Yours, truly,                                   T. P. Wallace, Cas."

Inclosed was a draft reading:

"Marion Deposit Bank.

"$5,000.                                   Marion, Ohio, July 14, 1896.
"Four months after date (acceptance waived) pay to the order of Jas. Dennison, cashier, five thousand dollars.
"To Irving National Bank.
"No. 106,955.                                   T. P. Wallace, Cash'r."

This draft came to the assistant cashier of the defendant, and was referred by him to the president, who authorized its discount, and the proceeds were placed to the credit of the Marion Deposit Bank. On October 19th, drafts of the Marion Deposit Bank having been presented to the defendant in an amount which would have overdrawn the account, a telegram was sent for an explanation, and then, according to the testimony of the defendant, its officers learned for the first time that the Marion Deposit Bank had no existence; that the name was a mere cover for the transactions of T. P. Wallace, who had appeared to be its cashier; and that Wallace had made a general assignment to the plaintiffs. At that time there was a balance on the defendant's books to the credit of the Marion Deposit Bank in the amount of $4,723.61. An item on the credit side of the account entering into this credit balance was the credit given on the $5,000 draft of July 14th, which was not to mature until November 14, 1896. This credit the defendants elected to rescind, and so notified the plaintiffs, to whom it sent a statement of account showing such rescission. In the assignees' schedules, filed in November, 1896, the debit balance ap-

pearing in the defendant's account as it stood after charging up the rescinded credit appears as a liability, and among the assets there is no claim against the defendant, though in their letter of October 30, 1896, they had notified the defendant that the credit on its books had been assigned for value to the holders of certain drafts, and that they would insist that those drafts be paid. Evidence was also introduced tending to show that when the credit in question was procured T. P. Wallace was hopelessly insolvent. At the close of the case each side moved for the direction of a verdict. The court denied the plaintiffs' motion, and granted that of the defendant; and the exceptions to the court's rulings on these motions, together with certain exceptions to rulings upon evidence, present the questions for review.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

John W. Houston, for appellants.
Charles E. Rushmore, for respondent.

O'BRIEN, J. Against the right of the plaintiffs as assignees to recover the credit balance which appeared in the account of the defendant bank standing in the name of the Marion Deposit Bank, four grounds of defense were interposed: (1) A denial that there was any credit given to the plaintiffs' assignor by the defendant; (2) an offset on the draft of $5,000, the discount of which by the defendant had been procured by fraudulent representations; (3) an equitable set-off to such draft; (4) that the plaintiffs were not the owners of the claim in suit. As to the right of equitable set-off, urged as the third ground of defense, this we must regard as disposed of by the case of Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, adversely to the defendant. Nor did the learned trial judge, in disposing of the motion for the direction of a verdict, attach much weight to the fourth ground,—that the plaintiffs are not the owners of the claim in suit; but the basis of his ruling was that, as the application for the discount was made in the name of a bank, purporting to be a bank of deposit, and the defendant had no notice to the contrary, the form of the application was calculated to deceive, and in point of fact did deceive, the defendant; and, in addition thereto, it appeared that Thomas P. Wallace, who was the sole owner of said bank, and did business under the name of a corporation which had no legal existence, at the time of the application for the discount was insolvent, and that this gave the defendant, upon discovering the true state of affairs, the right to rescind the discount and charge the amount back. As there was no request to go to the jury, both parties having moved for the direction of a verdict, the case was thus submitted to the court; and any facts which the jury would have been warranted from the evidence in finding, or any inference that they might, under proper instructions, have drawn from those facts, may be deemed to have been found and drawn by the court in favor of the defendant. Clason v. Baldwin, 152 N. Y. 207, 46 N. E. 322. If the conclusions which the court drew were reasonably inferable from the evidence, or were such as the jury could have drawn, then the verdict directed should not be disturbed.

The facts, as above summarized, will show that, considering the methods adopted by Wallace, plaintiffs' assignor, the defendant and its

officers might well have been led to believe—as they testified they did —that they were dealing with an incorporated banking institution, and that it was only because of that belief that.they gave the credit to recover the balance of which this action was brought.    Thus, the name itself, "Marion Deposit Bank," was consistent with the idea that it represented a banking corporation; and this was enforced by the form of the letter head used, beginning with the words, "Established June 10, 1854," and having printed thereon the names of persons designated as cashier, assistant cashier, and teller, which is the usual way of designating the officers of a corporation, and not the employés of an individual.    On the other hand, it was contended that no express representations were ever made by Wallace that the Marion Deposit Bank was a corporation; that not only the form of the letter head was consistent with the real state of facts, but, when considered in the light of the provisions of the Ohio statute requiring corporation names to begin with the word "The" and end with the word "Company," the presumption was that the Marion Deposit Bank·was not an incorporated institution; and that the letter head, in substantially the same form, had been used by Wallace for 35 years.    This latter evidence, even if fortified by the testimony sought to be introduced, and which was excluded. tending to show that individuals in Ohio did business under similar names and style, cannot destroy the inference fairly to be deduced from the defendant's evidence that it was misled and deceived, by the manner in which Wallace conducted his business, into the belief that it was dealing, not with him individually, but with an incorporated bank.    If Wallace conducted his business in form so as to make it reasonably to be inferred by persons dealing with him that he was an officer of an incorporated bank, and if his manner of conducting the business strengthened this belief, and one relying upon these appearances acted to his injury, he would be justified, upon learning the true state of affairs, in refusing to be bound by any contract into which he might have entered, or in continuing a credit that he might have given.    Nor is the effect to be ascribed to such a misrepresentation lessened by any showing that it was justified by reason of the laxity of the banking laws of the state of Ohio. For while it may be true that a person may use the name "bank" in connection with an individual business, it must not be so used as to deceive or induce one who loans money to believe that he is loaning it to a bank, when in fact he is loaning to an individual.    The lender is entitled to know to whom his money is going; and, if induced to part with it under the belief that it is going to a banking corporation, when in fact it is going to an individual, the right of rescission, upon knowledge of the true facts, will, upon well-settled principles of law, be sustained; because there is a great difference between placing money at the hazard of individual responsibility and intrusting it to a bank, which is hedged around by laws, controlling its conduct, tending to compel prudence and uprightness on the part of its management. Thus, by the laws of nearly all, if not all, the states, including Ohio, there is a requirement as to semiannual statements of financial condition which must be made by banking corporations, and which, to some extent, furnishes a safeguard against an institution continuing

business after it is insolvent. But beyond this, in a contract involving a credit, a misrepresentation as to the party assuming the indebtedness is a fraud. Collins v. Ralli, 20 Hun, 246, 85 N. Y. 637. Pol. Cont. (Wald's Ed.) p. 168, states the rule to be:

"The original parties to a contract must be persons ascertained when the contract is made. The creditor can demand performance from the debtor or his representatives. He cannot demand, nor can the debtor require him to accept, performance from any third persons."

And again, at page 420:

"Another kind of fundamental error is that which relates to the person with whom one is contracting. Where it is material for the one party to know who the other is, this prevents any real agreement from being formed. Such knowledge is, in fact, not material in a great part of the daily transactions of life,—as, for instance, when goods are sold for ready money, or when a railway traveler takes his ticket; and then a mere absence of knowledge, caused by complete indifference as to the person of the other party, cannot be considered a mistake, and there can hardly be any question of this kind. In principle, however, the intention of a contracting party is to create an obligation between himself and another person, and, if that intention fails to take its proper effect, it cannot be allowed to take a different effect of involving him, without his consent, in a contract with some one else."

See Ice Co. v. Potter, 123 Mass. 28; Winchester v. Howard, 97 Mass. 303.

It is true that the president of the defendant testified that the draft in question was discounted on the strength of the Marion Deposit Bank's account; and from this it is argued that no reliance was placed by the defendant upon the assumption that it was dealing with a regularly organized banking institution, and that it accorded a credit solely because of a sufficient credit balance to justify it. It would not be proper, however, to take this testimony alone, but it must be read in connection with other testimony of the president, that he believed that the Marion Deposit Bank was a banking corporation, and that this, together with the fact of the condition of the account, was the controlling cause leading to his granting the discount, he having no reason to suspect the insolvency of the Marion Deposit Bank. This misrepresentation on the part of Wallace, coupled, as it was, with testimony from which the court had a right to draw the inference that Wallace was hopelessly insolvent, with liabilities of more than $100,000 in excess of assets at the time the discount was obtained, was sufficient to support the ruling made in directing a verdict for the defendant.

It is insisted, however, by the appellants, that it was error to admit certain evidence introduced by the defendant from which the inference of insolvency was drawn. Thus, objection was made to the statement of the liabilities of Wallace made by the assignees in November, 1896, upon the ground that it failed to show, or tend to show, the condition of Wallace in July, 1896, when the draft was discounted. This statement was one made by these plaintiffs, and referred to the condition of Wallace as of a date four months subsequent, it is true, to the time of the discount, yet fixing a period when, with some certainty, a conclusion could be reached as to his then condition; and there is no claim but that at the time the assignment was made Wallace was hopelessly insolvent. This, with some testimony tending to

show that there were no losses between July and November, and no extraordinary shrinkage in assets or increase of liabilities between the dates named, laid some foundation from which, in the absence of evidence to the contrary, the court could infer that in July Wallace was irretrievably involved.    The evidence objected to as to the statement made by the assignees in November, supplemented by other testimony showing the condition from that period back to July, was not incompetent.

It was not error to exclude evidence showing the custom of other banks in Ohio in the matter of the form of letter heads, because the question was not whether Wallace had the right legally to use such a form of letter head, and do business under such a name, but whether he had or had not so conducted his business as to produce the belief, which was relied upon by the defendant in making the discount, that it was dealing with a banking corporation.    Such evidence, to be competent, should necessarily be coupled with knowledge on the part of the defendant's officers of such a practice among Ohio bankers; because otherwise the rule is that, without proof of knowledge on the part of both the contracting parties of a local trade custom, they are not affected thereby.    Neither would it make any difference as to the length of time that the defendant had been the correspondent of Wallace, provided that during all that time the business had been done in the same way, in the name of the Marion Deposit Bank, unless it was intended to be followed up (which is not claimed) by further evidence that the defendant knew that such name was employed in the individual business of Wallace.

What we have already said with reference to the ruling as to admitting in evidence the statement of liabilities filed by the plaintiffs on November 16, 1896, is equally applicable to the inventory and account of the assignees filed on November 10th.    We have examined other rulings upon evidence which have been questioned, and, while some of the exceptions might be technically right as respects the form of the questions which the court permitted to be answered, they are not of sufficient moment to justify our reversing a judgment which was entered upon a verdict, as this was, directed by the court; because here we have, outside of any objectionable evidence, facts, established by competent proof, from which the learned judge had the right to infer, not only the misrepresentation as to the person with whom the defendant was dealing, but also that at the time the discount was made Wallace was in such a state of insolvency that he could not have had any reasonable ground to assume when he obtained the discount that he would ever repay the amount.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.    All concur.